USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/5/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

CHRISTOPHER CAPANELLI,

                                        Plaintiff,

            v.

NYP HOLDINGS, INC. d/b/a NEW YORK POST and
LLOYD VAZQUEZ,

                                        Defendants.

-------------------------------------------------------------------- x

No. 06 Civ. 15397 (SHS) (JCF)

**JOINT PROPOSED**
**PRE-TRIAL ORDER**

Defendants propose the following statements, directions and agreements as the Pre-Trial

Order in the above-captioned action:

1.    **Full Case Caption**

      The Court is respectfully referred to the unabbreviated case caption provided above.


2.    **Trial Counsel**

      Mark Kressner, Esq.
      The Law Offices of Mark Kressner, Esqs.
      1937 Williamsbridge Road, Second Floor
      Bronx, New York 10461
      Telephone: (718) 409-6606
      Fax: (718) 409-6607
      E-mail: legalwolf@aol.com
      *Attorneys for Plaintiff*

      Michael Starr, Esq.
      Holland & Knight LLP
      195 Broadway, 24th Floor
      New York, New York 10007
      Telephone: (212) 513-3200
      Fax: (212) 385-9010
      E-mail: michael.starr@hklaw.com
      *Attorneys for Defendants*

3.  **Subject Matter Jurisdiction**

    (a)  *Plaintiff's Statement:*

        The original basis for subject matter jurisdiction in this case was federal question jurisdiction based on Plaintiff's cause of action for the violation of his civil rights and his rights under the United States Constitution. Although this claim has been dismissed, the Court retains jurisdiction over Plaintiff's remaining cause of action for malicious prosecution based on supplemental jurisdiction. *See* 28 U.S.C. § 1367(c). The Court already ruled on the applicability of supplemental jurisdiction in this case in its Order dated October 14, 2008.

    (b)  *Defendants' Statement:*

        Defendants do not contest the existence of subject matter jurisdiction in this matter. The Court has already ruled that with respect to Plaintiff's state-law claims, "federal subject matter jurisdiction exists here pursuant to 28 U.S.C. § 1367(c)." *See* Endorsed Order by Hon. Sidney H. Stein, dated October 14, 2008 [Docket No. 54].

4.  **Summary of Claims and Defenses Which Remain to be Tried**

    (a)  *Plaintiff's Summary:*

        Malicious Prosecution against Defendant LLOYD VAZQUEZ and NYP HOLDINGS, INC. d/b/a NEW YORK POST on the following grounds:

        (1) The commencement or continuation of a criminal proceeding by the defendant against the plaintiff in that (a) Defendant is the complainant in the criminal information; or (b) Defendant failed to fairly and truthfully disclose all matters within his knowledge that a person of ordinary intelligence would believe

2

material on the question of guilt or innocence; or (c) Defendant provided law enforcement authorities false information in bad faith; or (d) Defendant testified falsely in Plaintiff's criminal trial; or (e) Defendant withheld from law enforcement authorities material evidence and/or information; and

(2) The termination of the proceeding in favor of the accused, the fact of which has been stipulated to by the parties; and

(3) Defendant lacked probable cause to commence and/or continue the proceeding against Plaintiff, in that (a) a reasonably prudent person in the Defendants' position would not believe Plaintiff guilty; or (b) Defendants failed to make a full, complete and truthful statement of facts to law enforcement agencies; or (c) Defendants misrepresented or falsified evidence; or (d) Defendants withheld or destroyed evidence; or (e) Defendants failed to make further inquiry when a reasonable person would have done so; and

(4) Defendant acted with actual malice, in that (a) Defendant gave false statements to law enforcement; or (b) Defendants misrepresented or falsified evidence; or (c) Defendants withheld or destroyed evidence; (d) Defendants acted with reckless or grossly negligent disregard for Plaintiff's rights; or (e) Defendants acted with ill will or corrupt purpose or with a wrong or improper motive; (f) Defendants acted for any purpose other than a desire to see the ends of justice served; or (g) based on an inference resulting from the lack of probable cause.

Plaintiff seeks both compensatory and punitive damages in this action.

Withdrawn or dismissed claims include: false imprisonment, breach of labor

3

agreement, breach of employment contract, violation of state and federal civil

rights, tortious interference with business/employment relations, and all claims

against Defendant Joseph Vincent.

(b)    ***Defendants' Summary:***

Plaintiff's sole claim remaining for trial is a New York state common-law claim

of malicious prosecution against Defendants NYP Holdings, Inc. d/b/a New York

Post and Lloyd Vazquez on the alleged ground that Vazquez intentionally lied,

withheld evidence, and/or testified falsely in procuring the underlying criminal

prosecution.  Plaintiff previously asserted other causes of action in his Verified

Complaint, all of which have been dismissed either by order of this Court or by

stipulation of the parties, and do not require trial.  They are as follows:  (1)

wrongful termination; (2) intentional infliction of emotional distress; (3) fraud; (4)

breach of contract; (5) state civil rights violations; (6) federal civil rights

violations; (7) tortious interference; (8) false imprisonment; (9) malicious

prosecution against Defendant Joseph Vincent; and (10) malicious prosecution

against all Defendants on the ground of procuring Plaintiff's criminal prosecution

through improper influence.

At trial, Defendants intend to assert some or all of the following defenses to

Plaintiff's claim of malicious prosecution:

(1)       Defendants did not commence the complained-of prosecution of

          Plaintiff, and specifically that:

                    (a) Defendant was not the complainant in the criminal information;

                    (b) Defendant did not fail to fairly and truthfully disclose all

4

matters within his knowledge that a person of ordinary intelligence would, under all the surrounding circumstances, believe to be material to the question of the commission of a crime, Plaintiff's identity as the likely perpetrator of that crime, or otherwise related to guilt or innocence; (c) Defendant did not provide any information that he himself consciously believed to be false or that, in fact, was false to the police in reporting the crime with which Plaintiff was charged or in responding to their inquiries and at no time acted in bad faith; (d) Defendant did not give a Plaintiff's criminal trial any testimony that he himself consciously believed to be false or that, in fact, was false and, further, that such testimony was presented by the prosecuting attorney in his sole and unfettered discretion after his having had access to additional information secured by the police in its independent investigation into the facts and circumstances relating to the matters that were the subject of the criminal prosecution at issue and, further, that such Defendant's testimony supplemented and was corroborated by the testimony of other witnesses called to testify by the prosecuting attorney in the exercise of his independent judgment and discretion, and (e) Defendant did not deliberately fail to present to law enforcement authorities any evidence he believed to be, or had reason to be was, relevant to the commission of the crime at issue or the identity of the perpetrator of that crime and that he, in fact,

5

tendered additional information and documents to the prosecuting

attorney who expressly instructed him not to produce them.

(2)      Probable cause supported the Defendant Vazquez's decision to refer the

matter of Plaintiff's vandalism of Jason Quick's locker to governmental

authorities specifically that:

(a) a reasonable person in Defendant's position could and would

have the belief that Plaintiff had been the individual who

perpetrated the crime for which he was prosecuted given the

information actually known to Defendant at the relevant times; (b)

the statements made by Defendant to law enforcement authorities

were truthful and complete based on the information available to

Defendant at the relevant times and were statements that a

reasonable person would believe to be as complete as appropriate

under all the facts and circumstances actually known to Defendant

or believed by Defendant to be the case; (c) Defendant did not

tamper with or otherwise falsify any material he presented to law

enforcement authorities concerning the crime for which Plaintiff

was charged, did not present to law enforcement any information

that he did not actually believe to be true and accurate, and did not

consciously or deliberately make statements to law enforcement

authorities that he himself believed to be false or in any other

manner misrepresent evidence; (d) Defendant did not fail to proffer

to law enforcement authorities any material that he actually

6

believed to be, or had reason to believe was, relevant to the commission of the crime for which Plaintiff was charged or the identity of the perpetrator of that crime and did not destroy any such material, did not destroy any material asserted by Plaintiff at that time to be relevant to the crime for which he was charged, did not destroy any material now asserted by Plaintiff to be relevant to the crime for which he was charged until after the prosecuting attorney had informed Defendant that she was satisfied with the materials supplied by Defendant and, further, that Defendant had no reason to believe that material destroyed was in any way relevant to the crime with which Plaintiff was charged nor was such material believed by any one to be relevant to such crime until long after Defendant had already testified at the trial of the crime for which Plaintiff was charged and, further, that any investigative material Defendant had was destroyed for legitimate reasons, and (e) Defendant did not fail to make any inquiry that a reasonable person would have made under the circumstances, which included Defendant's belief that Plaintiff was the person depicted on a videotape engaged in committing the crime for which Plaintiff was charged and doing so at the time that Defendant had reason to believe such crime was committed, the confirmation by others of Plaintiff's identity as the person depicted on videotape engaged in committing the crime for which Plaintiff

7

was charged at the time that Defendant had reason to believe such crime was committed, the absence of any information that there was any other person with both reason and motive to perpetrate the crime for which Plaintiff was charged and also the opportunity to commit said crime at the time that he believed it had been committed.

(3)      Probable cause supported the decision by governmental authorities to prosecute Plaintiff for the vandalism of Jason Quick's locker;

(4)      Defendant did not act with actual malice and specifically that:

(a) Defendant did not give to any law enforcement agencies any information that he himself believed to be false at the time such information was provided; (b) Defendant did not tamper with or otherwise falsify any material he presented to law enforcement authorities concerning the crime for which Plaintiff was charged, did not present to law enforcement any information that he did not actually believe to be true and accurate, and did not consciously or deliberately make statements to law enforcement authorities that he himself believed to be false or in any other manner misrepresent evidence; (c) Defendant did not deliberately fail to present to law enforcement authorities any material that he believed to be, or had reason to believe was, relevant to the commission of the crime for which Plaintiff was charged or the identity of the perpetrator of that crime and did not destroy any such material, did not destroy

8

any material asserted by Plaintiff at that time to be relevant to the crime for which he was charged, did not destroy any material now asserted by Plaintiff to be relevant to the crime for which he was charged until after the prosecuting attorney had informed Defendant that she was satisfied with the materials supplied by Defendant and, further, that Defendant had no reason to believe that the material destroyed was in any way relevant to the crime with which Plaintiff was charged nor was such material believed by anyone to be relevant to such crime until long after Defendant had already testified at the trial of the crime for which Plaintiff was charged and, further, that any investigative material Defendant had was destroyed for legitimate reasons; (d) Defendant did not act recklessly or with gross negligence disregard Plaintiff's rights, which would not in any event constitute actual malice as a matter of law; (e) Defendant did not act with ill will or corrupt purpose or with any wrong or improper motive; (f) Defendant acted with no purpose other than a desire to see the ends of justice served, and (g) Defendant's belief that Plaintiff perpetrated the charge for which he was tried was not so totally lacking in probably cause as to permit an inference that Defendant did not actually believe in Plaintiff's guilt, and/or

(5)     Plaintiff committed the crime for which he was prosecuted and which forms the basis of his claim of malicious prosecution.

9

5. **Type of Trial / Length of Trial**

    (a) *Plaintiff's Statement:*

        (1)    Plaintiff asserts that trial should proceed with a jury. Plaintiff filed a demand for a jury on March 19, 2009 pursuant to Rule 81(c)(3) of the Federal Rules of Civil Procedure.

        (2)    Plaintiff anticipates that 4 days of trial will be required in this matter.

    (b) *Defendants' Statement:*

        (1)    Defendants assert that this matter must be tried without a jury because Plaintiff has failed to make a timely jury demand. In particular, (1) Plaintiff did not demand a jury trial in his state court Verified Complaint filed on October 25, 2006; (2) he failed to demand a jury trial in his Amended Complaint filed with this Court on February 27, 2008 – more than one year after removal – and (3) he failed to demand a jury trial within 10 days of Defendants' Answer to Amended Complaint, which was filed on March 7, 2008. *See* Fed. R. Civ. P. 38(b). Under Fed. R. Civ. P. 38(d), such failure constitutes "a waiver" by the Plaintiff of any right that he may have had to a jury trial. Rule 81(c)(3) is not applicable here and while the Court, in its discretion, could excuse Plaintiff's untimely jury demand in much the same way as is allowed by Rule 39(b), it should not exercise its discretion to permit a jury trial in this case. The factual and legal basis for Defendants' position is more fully set forth in its pending motion to strike Plaintiff's Demand for a Jury Trial, dated March 19, 2008 [Docket No. 82].

(2)     Defendants anticipate that 4 days of trial will be required in this matter.

(3)     Defendants further move that the trial of this matter be bifurcated,

trying liability separately from damages.

6.  **Trial Before a Magistrate Judge**

The parties have not consented to trial of this case by a magistrate judge.

7.  **Undisputed Statements of Fact or Law**

(a)     The parties have agreed to the statements of fact set forth in the attached

APPENDIX A.  Each party, however, expressly reserves its right to object to the

materiality of any agreed fact and its relevancy to the issues.

(b)     The parties have agreed to the statements of law set forth in the attached

APPENDIX B.  Each party, however, expressly reserves its right to augment or

refine any agreed proposition of law.

8.  **Trial Witnesses**

The parties provide the following lists of witnesses whom they may call to provide

testimony in person at the trial of this action.

(a)     *Plaintiff's Witnesses:*

(1)     Michael Bender
29 Arista Dr., Dix Hills, NY  11746

(2)     Rhonda Bender
29 Arista Dr., Dix Hills, NY  11746

(3)     Plaintiff Christopher Capanelli
26 Arista Drive, Dix Hills, NY  11746

(4)    Susan Bender Capanelli
26 Arista Drive, Dix Hills, NY  11746

(5)    Thomas J. Coffin
3982 Maywood Drive, Seaford, NY  11783

(6)    Frank L. Donnatin
3 Aspen Circle, St. James, NY  11780

(7)    Defendant Lloyd Vazquez
Port Morris Print Center
900 East 132nd Street, Bronx, NY  10454

(8)    Joseph Vincent
Port Morris Print Center
900 East 132nd Street, Bronx, NY  10454

(9)    *Detective John P. Wall
Office of the District Attorney, Bronx County
198 East 161st Street, Room 622
Bronx, NY 10451
718-590-2000

DEFENDANTS' OBJECTIONS:

- Defendants object to the testimony of this witness on the grounds that he was not identified in Plaintiff's Supplemental Response to Defendants' Interrogatories as required by Order of the Honorable Magistrate Judge James C. Francis, dated July 3, 2008 [Docket No. 37], and request that, pursuant to such Order and Fed. R. Civ. P. 37(b)(2), his testimony be excluded.

(b)    ***Defendants' Witnesses:***

In its case in chief, Defendants will call the following witnesses to testify in

person:

(1)    *Christopher Nash
409 Colon Street
Staten Island, NY 10312
718-277-0456

PLAINTIFF'S OBJECTIONS:

- Plaintiff objects to the testimony of this witness on the grounds that his testimony will be immaterial, cumulative and irrelevant.

12

(2)     Jason Quick
        83 Front Street, 2nd Floor
        Brooklyn, NY 11201
        917-771-0307

(3)     Defendant Lloyd Vazquez
        Port Morris Print Center
        900 East 132nd Street, Bronx, NY 10454
        718-742-3000

(4)     Joseph Vincent
        Port Morris Print Center
        900 East 132nd Street, Bronx, NY 10454
        718-742-3000

Defendants may call, if the need arises, the following witnesses:

(1)     *Elliot Azoff, Esq.
        Baker Hostetler LLP
        3200 National City Center, 1900 East 9th Street
        Cleveland, OH 44114
        216-861-7446

        PLAINTIFF'S OBJECTIONS:

        ▪   Plaintiff objects to the testimony of this witness on the
            grounds that his testimony will be immaterial and irrelevant,
            that he was not identified by Defendants as required by Fed.
            R. Civ. P. 26(a)(1) or in any other subsequent disclosure,
            and Plaintiff requests that, pursuant to Fed. R. Civ. P.
            37(c)(1), his testimony be excluded.

(2)     *Assistant District Attorney Colleen Barry
        Office of the District Attorney, Bronx County
        198 East 161st Street, Room 622
        Bronx, NY 10451
        718-590-2000

        PLAINTIFF'S OBJECTIONS:

        ▪   Plaintiff objects to the testimony of this witness on the
            grounds that her testimony will be immaterial and
            irrelevant, that she was not identified by Defendants as
            required by Fed. R. Civ. P. 26(a)(1) or in any other
            subsequent disclosure, and Plaintiff requests that, pursuant
            to Fed. R. Civ. P. 37(c)(1), her testimony be excluded.

(3)     *William E. Bogan

13

51 Dartmouth Street
Valley Stream, NY 11581
516-791-2142

PLAINTIFF'S OBJECTIONS:

- Plaintiff objects to the testimony of this witness on the grounds that his testimony will be immaterial, cumulative and irrelevant, that he was not identified by Defendants as required by Fed. R. Civ. P. 26(a)(1) or in any other subsequent disclosure, and Plaintiff requests that, pursuant to Fed. R. Civ. P. 37(c)(1), his testimony be excluded.

(4)    *Katherine M. Bolger, Esq.
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
212-918-3000

PLAINTIFF'S OBJECTIONS:

- Plaintiff objects to the testimony of this witness on the grounds that her testimony will be immaterial and irrelevant, that she was not identified by Defendants as required by Fed. R. Civ. P. 26(a)(1) or in any other subsequent disclosure, and Plaintiff requests that, pursuant to Fed. R. Civ. P. 37(c)(1), her testimony be excluded.

(5)    *Gregory Cho, Esq.
New York State Metropolitan Transportation Authority
2 Penn Plaza, 5th Floor
New York, NY 10121
212-878-0069

PLAINTIFF'S OBJECTIONS:

- Plaintiff objects to the testimony of this witness on the grounds that his testimony will be immaterial, cumulative, and irrelevant, that he was not identified by Defendants as required by Fed. R. Civ. P. 26(a)(1) or in any other subsequent disclosure, and Plaintiff requests that, pursuant to Fed. R. Civ. P. 37(c)(1), his testimony be excluded.

(6)    *Dennis Consumano, Esq.
Law Offices of Dennis Consumano, PLLC
110 Wall Street, 11th Floor

14

New York, New York 10005
212-804-5767

PLAINTIFF'S OBJECTIONS:

- Plaintiff objects to the testimony of this witness on the grounds that his testimony will be immaterial, cumulative and irrelevant, that he was not identified by Defendants as required by Fed. R. Civ. P. 26(a)(1) or in any other subsequent disclosure, and Plaintiff requests that, pursuant to Fed. R. Civ. P. 37(c)(1), his testimony be excluded.

(7)    *William Lappe
1239 Mayflower Avenue
Bronx, NY 10461
718-597-4605

PLAINTIFF'S OBJECTIONS:

- Plaintiff objects to the testimony of this witness on the grounds that his testimony will be immaterial, cumulative and irrelevant, that he was not identified by Defendants as required by Fed. R. Civ. P. 26(a)(1) or in any other subsequent disclosure, and Plaintiff requests that, pursuant to Fed. R. Civ. P. 37(c)(1), his testimony be excluded.

(8)    *Stanley J. Chayka
President, CEO
NextGen Associates, Inc.
5665 Main St.
East Petersburg, PA 17520
201-410-1922

PLAINTIFF'S OBJECTIONS:

- Plaintiff objects to the testimony of this witness on the grounds that his testimony will be immaterial and irrelevant, that he was not identified by Defendants as required by Fed. R. Civ. P. 26(a)(1) or in any other subsequent disclosure, and Plaintiff requests that, pursuant to Fed. R. Civ. P. 37(c)(1), his testimony be excluded.

(9)    *Detective John Wall
Office of the District Attorney, Bronx County
198 East 161st Street, Room 622
Bronx, NY 10451
718-590-2000

15

PLAINTIFF'S OBJECTIONS:

- Plaintiff objects to the testimony of this witness on the grounds that her testimony will be immaterial and irrelevant, that he was not identified by Defendants as required by Fed. R. Civ. P. 26(a)(1) or in any other subsequent disclosure, and Plaintiff requests that, pursuant to Fed. R. Civ. P. 37(c)(1), his testimony be excluded.

9.    **Deposition Testimony**

(a)    ***Deposition Testimony to be Offered by Plaintiff:***

(1)    Plaintiff does not anticipate offering deposition testimony in his case-in-chief.

(2)    Plaintiff intends to offer portions of the transcript of the testimony of Frank Donnatin, Jr. given on or about January 10, 2003 before the New York State Supreme Court, County of Bronx at the criminal trial of Plaintiff (the "*Capanelli Criminal Trial*") as follows:

(1) pages 529:4 through 533:2;

(2) pages 533:11 through 536:17;

(3) page 538:9 through 538:22, and

(4) pages 541:15 through 542:22.

DEFENDANTS' OBJECTIONS:

- Defendants object generally to the admission of the transcript of testimony of Frank Donnatin, Jr. on the grounds of hearsay, unfair surprise, and Fed. R. Civ. Proc. 37(c)(1).

- Defendants further specially object to the admission of certain portions of said testimony as follows:

(1) pages 534:16 to 535:17, as it refers to trial exhibits that are not identified by Plaintiff in this proceeding;

(2) page 536:10 through 536:17 on grounds of relevance and that it is elicited by improper leading of the witness, and

16

(3) page 542:13 to 542:20 on the grounds that it is hearsay within hearsay.

- In the event that any such transcript excerpts are admitted, Defendants seek the introduction, pursuant to Fed. R. Evid. 106, of the following other portions of Mr. Donnatin's testimony at the Capanelli Criminal Trial: page 543:2 through 543:26.

(3)    Plaintiff further intends to offer portions of the transcript of the testimony of Thomas Coffin given at the Capanelli Criminal Trial as follows:

(1) pages 546:21 through 554:11;

(2) pages 555:14 through 556:23;

(3) page 557:2 through 557:16;

(4) pages 557:23 through 559:16;

(5) page 565:17 through 565:21, and

(6) pages 567:14 through 569:4.

DEFENDANTS' OBJECTIONS:

- Defendants object generally to the admission of the transcript of testimony of Thomas Coffin on the grounds of hearsay, unfair surprise, and Fed. R. Civ. Proc. 37(c)(1).

- Defendants further specially object to the admission of certain portions of said testimony as follows:

(1) pages 552:17 through 554:1 on the grounds that it refers to trial exhibits that are not identified by Plaintiff in this proceeding;

(2) page 556:7 through 556:25 on the grounds that it is irrelevant and immaterial and is elicited by means of improper leading of the witness, and

(3) page 559:1 through 559:15 on grounds that it is irrelevant and immaterial and elicited by means of improper leading of the witness.

- In the event that any such transcript excerpts are admitted, Defendants seek the admission, pursuant to Fed. R. Evid.

17

106, of the following other portions of Mr. Coffin's testimony at the Capanelli Criminal Trial:

(1) pages 561:9 through 564:12;

(2) pages 567:14 through 570:1, and

(3) pages 571:2 through 573:23.

(4)     Plaintiff further intends to offer portions of the transcript of the testimony of Lloyd Vazquez given at the Capanelli Criminal Trial as follows:

(1) pages 338:6 through 341:4;

(2) pages 342:10 through 343:3;

(3) pages 343:9 through 345:18;

(4) pages 243:3 through 245:6;

(5) pages 245:18 through 246:3;

(6) pages 246:15 through 249:23;

(7) pages 252:1 through 253:25;

(8) page 254:10 through 254:14;

(9) pages 257:17 through 258:2;

(10) pages 259:4 through 261:3;

(11) pages 266:24 through 267:2;

(12) page 267:10 through 267:13;

(13) pages 277:25 through 280:9;

(14) pages 280:25 through 281:17;

(15) pages 282:23 through 285:21;

(16) pages 286:20 through 287:2;

(17) page 294:20 through 294:24;

(18) page 302:5 through 302:13;

(19) page 303:1 through 303:16;

(20) pages 304:4 through 307:22;

(21) pages 309:3 through 311:10;

(22) pages 315:11 through 318:18;

(23) pages 321:5 through 323:21;

(24) page 324:1 through 324:25;

(25) page 325:16 through 325:22;

(26) page 326:5 through 326:22;

(27) page 329:4 through 329:10;

(28) pages 346:1 through 347:23;

(29) page 349:19 through 349:24;

(30) pages 351:12 through 354:6;

(31) pages 361:15 through 365:22, and

(32) pages 367:13 through 370:16.

DEFENDANTS' OBJECTIONS:

- Defendants object generally to the admission of the transcript of testimony of Lloyd Vazquez given at the Capanelli Criminal Trial on the grounds of Fed. R. Civ. Proc. 37(c)(1). By Order dated July 3, 2008 (Docket No. 37), Plaintiff was directed to identify all party admissions and was "precluded from . . . present[ing] as evidence at trial" "[a]ny statements not so identified." Plaintiff, however, did not identify particular statements made by Mr. Vazquez but referred only generically to "statements made by Mr. Vazquez on pages 337-371, 395-400 of the criminal transcript." (*See* Pltf. Suppl. Resp. to Def. Interrogatories, dated July 30, 2008 at 3.)

- Defendants further specially object to the admission of certain portions of said testimony as follows:

  (1) page 280:1 through 280:9 on grounds that it is irrelevant and immaterial;

19

(2)  pages 280:25 through 281:17 on grounds that it is irrelevant and immaterial;

(3)  pages 284:10 through 285:21 on the grounds that it is irrelevant and immaterial;

(4)  page 294:20 through 294:24 on the ground of ambiguity;

(5)  page 324:1 through 324:25 on the grounds that it is irrelevant and immaterial;

(6)  page 326:5 through 326:22 on the grounds that it is irrelevant and immaterial;

(7)  page 329:4 through 329:10 on the grounds that it is ambiguous, irrelevant and immaterial;

(8)  page 346:11 through 346:24 on the grounds that the witness has no personal knowledge and the statements are hearsay and are not a party admission within the meaning of Fed. R. Evid. 801;

(9)  pages 346:25 through 347:23 on the grounds that it is irrelevant and immaterial;

(10)  page 349:19 through 349:24 on the ground that it is irrelevant and immaterial;

(11)  pages 351:12 through 354:6 on the ground that it is irrelevant and immaterial and, further, as to certain statement that the witness lacks personal knowledge and that the statement is hearsay and not a party admission within the meaning of Fed. R. Evid. 801, and

(12)  pages 362:13 through 363:2 on the ground that it is irrelevant and immaterial.

■  In the event that any such transcript excerpts are admitted, Defendants seek the admission, pursuant to Fed. R. Evid. 106, of the following other portions of Mr. Vazquez's testimony at the Capanelli Criminal Trial:

(1)  pages 249:24 through 250:2;

(2)  page 302:14 through 302:21;

(3)  pages 329:14 through 330:10, and

20

(4) page 354:7 through 354:18.

(b)   ***Deposition Testimony to be Offered by Defendants:***

Defendants' designation of those portions of the deposition of Plaintiff

Christopher Capanelli, taken June 16, 2008, that they intend to offer in their case

in chief are annexed hereto as APPENDIX C.  Defendant expressly reserves the

right to refer to other portions of Plaintiff's deposition for purposes of cross-

examination or impeachment.

10.   **Trial Exhibits**

(a)   ***Plaintiff's Trial Exhibits:***

**\*Exhibit 1:** Letter from Barry Mechanic to John Heffernan, dated April 4, 2001

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u>  authentication, hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 2:** Letter from Christopher Capanelli to Raymond Walsh, dated November 22, 2002

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u>  hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 3:** Letter from Christopher Capanelli to Raymond Walsh, dated December 2, 2002

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u>  hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 4:** Letter from Raymond Walsh to Christopher Capanelli, dated December 5, 2002

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u>  hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 5:**  Letter from Christopher Capanelli to Raymond Walsh, dated
December 11, 2002

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance,
Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 6:**  Letter from Joseph Vincent to Desiree and Sherre Wilson, dated
March 31, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance,
Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 7:**  Letter from Christopher Capanelli to Joseph Vincent, dated April 9,
2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance,
Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 8:**  Letter from Joseph Vincent to William Loftus, dated May 8, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance,
Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 9:**  Letter from Christopher Capanelli to Raymond Walsh, dated May 11,
2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance,
Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 10:** Letter from William Loftus to Joseph Vincent, dated May 15, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance,
Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 11:** Letter from Joseph Vincent to William Loftus, dated May 20, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance,
Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 12:** Letter from Christopher Capanelli to Joseph Vincent, dated May 22, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 13:** Letter from Joseph Vincent to Christopher Capanelli, dated May 27, 2003

- Plan to offer

**\*Exhibit 14:** Letter from Christopher Capanelli to Raymond Walsh, dated June 9, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 15:** Fax from Christopher Capanelli to Raymond Walsh, dated June 10, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay (hearsay-within-hearsay), relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 16:** Letter from Joseph Vincent to William Loftus, dated June 10, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 17:** Letter from Christopher Capanelli to Joseph Vincent, dated June 25, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 18:** Letter from Joseph Vincent to William Loftus, dated June 27, 2003

- Plan to offer

**Exhibit 19:** Handwritten notes (1 page) dated July 23, 2003

- Plan to offer

**\*Exhibit 20:** Memo from Lloyd Vazquez to Kris Socia, dated August 4, 2003 (with attachments)

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 21:** Memo from Lloyd Vazquez to Kris Socia, dated August 5, 2003 (with attachments)

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 22:** Memo from S. Newman to Lloyd Vazquez, dated August 12, 2003

- Plant to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 23:** Letter from Joseph Vincent to William Loftus, dated August 12, 2003

- Plan to offer

**\*Exhibit 24:** Letter from William Loftus to Joseph Vincent, dated August 22, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay

**\*Exhibit 25:** Memo from Benjamin Olan to Lloyd Vazquez, dated August 23, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 26:** Joint Conference Decision, signed August 26 and August 28, 2003

- Plan to offer

**\*Exhibit 27:** Memo from Lloyd Vazquez to Kris Socia, dated August 28, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

24

**\*Exhibit 28:** Fax from Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP to Elliot Azoff, Esq., dated September 9, 2003

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 29:** Memo from J. Piazza to Lloyd Vazquez, dated September 15, 2003

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 30:** Memo from J. Piazza to Lloyd Vazquez, dated September 16, 2003

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 31:** Memo from Lloyd Vazquez to Kris Socia, dated October 2, 2003

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 32:** NY Post Weekly Attendance October 16-22, 2003

- Plan to offer

**Exhibit 33:** New York Post Pressroom Daily Time Sheet, dated October 23, 2003

- Plan to offer

**Exhibit 34:** Daily Time Sheet, dated October 23, 2003

- Plan to offer

**Exhibit 35:** Payroll deduction form signed by Vincent Valerio, dated 10/23/03, and fax transmission report, dated 10/24/2003

- Plan to offer

**Exhibit 36:** Photo of Jason Quick's locker dated October 24, 2003, marked E1

- Plan to offer

**Exhibit 37:** Photo of Jason Quick's locker dated October 24, 2003, marked E2

- Plan to offer

**Exhibit 38:** Photo of Jason Quick's locker dated October 24, 2003, marked E4

- Plan to offer

**Exhibit 39:** Memo from Lloyd Vazquez to Kris Socia, dated October 24, 2003

- Plan to offer

**\*Exhibit 40:** Fax from Christopher Capanelli to Bill Loftus, dated October 24, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  authentication hearsay, relevance Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 41:** Handwritten chart created by Lloyd Vazquez relating to surveillance videos

- May offer if need arises

**Exhibit 42:** Joseph Vincent's handwritten meeting preparation notes dated November 18, 2003 relating to Christopher Capanelli

- Plan to offer

**\*Exhibit 43:** Memo from J. Piazza to Lloyd Vazquez, dated November 18, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 44:** Memo from J. Piazza to Lloyd Vazquez, dated November 19, 2003.

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 45:** Fax from Ray Walsh to Joseph Vincent, dated November 21, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 46:** New York Post Pressroom Daily Time Sheet, dated November 22, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 47:** New York Post Pressroom Daily Time Sheet, dated November 23, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 48:** Memo from J. Piazza to Lloyd Vazquez **re: Quick**, dated November 24, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 49:** Memo from J. Piazza to Lloyd Vazquez **re: Tonneson**, dated November 24, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 50:** Letter from Joseph Vincent to William Loftus, dated November 28, 2003

- Plan to offer

**\*Exhibit 51:** E-mail from Christopher Capanelli to Achieng Warambo of OSHA, dated December 1, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 52:** Memo from J. Piazza to Lloyd Vazquez, dated December 5, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS:  relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 53:** Memo from Steven Grossman to Lloyd Vazquez, dated December 5, 2003

- Plan to offer

**\*Exhibit 54:** NY Post Weekly Attendance December 4-10, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS: relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 55:** Memo from J. Piazza to Lloyd Vazquez, dated December 11, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS: relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 56:** Fax from Christopher Capanelli to Raymond Walsh, dated December 17, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS: hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 57:** Fax from Joseph Vincent to William Loftus, dated December 18, 2003

- Plan to offer

**\*Exhibit 58:** Audio recording of meeting between Joseph Vincent, Christopher Capanelli, and others on December 18, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS: authentication, hearsay, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 59:** Transcript of the audio recording of meeting between Joseph Vincent, Christopher Capanelli, and others on December 18, 2003

- Plan to offer
- DEFENDANTS' OBJECTIONS: authentication, hearsay, relevance, Fed. R. Evid. 403.

28

**\*Exhibit 60:** Memo from Steven Grossman to Lloyd Vazquez, dated December 18, 2003

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 61:** Photo of Christopher Capanelli, dated December 18, 2003

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 62:** E-mail from Jim Baker to various NY Times employees dated December 19, 2003

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> authentication, hearsay, relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 63:** Memo from Lloyd Vazquez to Kris Socia, dated January 25, 2004

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 64:** Memo from S. Newman to Lloyd Vazquez, dated January 26, 2004

- Plan to offer
- <u>DEFENDANTS' OBJECTIONS:</u> relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**Exhibit 65:** Letter from Lloyd Vazquez to Bronx DAO (Det. Wall), dated February 20, 2004

- Plan to offer

**Exhibit 66:** Desk appearance ticket dated February 23, 2004

- Plan to offer

**Exhibit 67:** Criminal information and supporting deposition of Defendant Vazquez dated February 23, 2004

- Plan to offer

**\*Exhibit 68:** Memo from Paul Wyszinski to Lloyd Vazquez, dated June 1, 2004

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay (hearsay-within-hearsay), relevance, Fed. R. Evid. 403, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 69:** Transcript from Plaintiff's criminal prosecution

- Plan to offer
- DEFENDANTS' OBJECTIONS:  authentication, hearsay, relevance, Fed. R. Evid. 403

**\*Exhibit 70:** Transcript from Plaintiff's arbitration with the NY Post

- Plan to offer
- DEFENDANTS' OBJECTIONS:  hearsay, relevance, Fed. R. Evid. 403

**Exhibit 71:** Letter from Michael Bender to Siriano & Bernstein and accompanying check, dated January 13, 2004

- Plan to offer

**Exhibit 72:** Invoices, receipts and statement of services from Rick Arden to Susan Capanelli

- Plan to offer

**\*Exhibit 73:** Invoices from Deja View/Prominent Video to Susan Bender

- Plan to offer
- DEFENDANTS' OBJECTIONS:  authentication, hearsay, relevance

**\*Exhibit 74:** Invoice from Kirk, Medina, Lipton and Ketover

- Plan to offer
- DEFENDANTS' OBJECTIONS:  Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 75:** Handwritten and typed loan spreadsheets

- Plan to offer
- DEFENDANTS' OBJECTIONS:  authentication, hearsay, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 76:** Letter from James Culleton, Esq. to Susan Capanelli, dated March 6, 2009

- Plan to offer
- DEFENDANTS' OBJECTIONS: authentication, hearsay, Fed. R. Civ. P. 37(c)(1)

**\*Exhibit 77:** Plaintiff's complaint from the case entitled: *Christopher Capanelli v. News Corporation, db/a New York Post*, filed in Supreme Court Suffolk County, and bearing Index No. 15112/2004.

- May offer if the need arises
- DEFENDANTS' OBJECTIONS: relevance, Fed. R. Evid. 403; hearsay

**\*Exhibit 78:** Defendant's Answer from the case entitled: *Christopher Capanelli v. News Corporation, db/a New York Post*, filed in Supreme Court Suffolk County, and bearing Index No. 15112/2004.

- May offer if the need arises
- DEFENDANTS' OBJECTIONS: relevance, Fed. R. Evid. 403

**\*Exhibit 79:** Affidavit of Joseph Vincent dated December 22, 2005 submitted in support of NYP's motion to strike plaintiff's complaint in the case entitled: *Christopher Capanelli v. News Corporation, db/a New York Post*, filed in Supreme Court Suffolk County, and bearing Index No. 15112/2004.

- Plan to offer
- DEFENDANTS' OBJECTIONS: relevance, Fed. R. Evid. 403

**\*Exhibit 80:** Plaintiff's complaint from the instant case filed in Supreme Court Bronx County, and bearing Index No. 22315/2006.

- May offer if the need arises
- DEFENDANTS' OBJECTIONS: relevance, Fed. R. Evid. 403, hearsay

**\*Exhibit 81:** Plaintiff's Amended Summons and Complaint from the instant case, dated February 22, 2008.

- May offer if the need arises
- DEFENDANTS' OBJECTIONS: hearsay

**Exhibit 82:** Defendant's Answer from the instant case, filed March 7, 2008.

- May offer if the need arises

**Exhibit 83:** Declaration of Joseph Vincent dated August 8, 2008, which was submitted in support of Defendant's motion for summary judgment.

- May offer if the need arises

**Exhibit 84:** Declaration of Lloyd Vazquez dated August 8, 2008, which was submitted in support of Defendant's motion for summary judgment.

- May offer if the need arises

**Exhibit 85:** Reply Declaration of Joseph Vincent dated October 14, 2008, which was submitted in support of Defendant's motion for summary judgment.

- May offer if the need arises

**Exhibit 86:** Reply Declaration of Lloyd Vazquez dated October 14, 2008, which was submitted in support of Defendant's motion for summary judgment.

- May offer if the need arises

**Exhibit 87:** Declaration of Christopher Nash dated October 15, 2008, which was submitted in support of Defendant's motion for summary judgment.

- May offer if the need arises

**Exhibit 88:** Supplemental Declaration of Lloyd Vazquez dated January 15, 2009, which was submitted in support of Defendant's objections to the report and recommendation.

- May offer if the need arises

**Exhibit 89:** Handwritten notes of Joseph Vincent (4 pages), dated "1/16/04"

- Plan to offer

(b)  ***Defendants' Trial Exhibits:***

Exhibits the Defendants either expect to offer or will offer if the need arises,

excluding exhibits to be offered for impeachment purposes, are as follows:

32

**\*Exhibit A:**  Memorandum from Raymond Walsh Jr. to all pressroom personnel
regarding vandalism to Post property, dated July 31, 2001

- Expects to offer

- <u>PLAINTIFF'S OBJECTIONS</u>:  hearsay, relevance,
  Fed. R. Evid. 403

**Exhibit B:**  Letter from Joseph Vincent to William Loftus, dated May 20, 2003

- Expects to offer

**\*Exhibit C:**  Videotape recording from concealed video-camera in pressman's
locker room at the Port Morris Facility of events occurring on
October 22, 2003 and October 23, 2003

- May offer if the need arises

- <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication,
  Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit D:**  Videotape recording from concealed video-camera in pressman's
locker room at the Port Morris Facility of events occurring on
October 23, 2003 and October 24, 2003

- Expects to offer

- <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication,
  duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit E:**  Visually-enhanced videotape recording prepared by NextGen
Associates, Inc.  (Defendants' Exhibit 13 to the June 16, 2008
deposition of Plaintiff)

- Expects to offer

- <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication,
  duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit F:**  Digital video disc (*"DVD"*) as prepared by the New York Police
Department's Technical Assistance Research Unit (*"TARU"*)
containing visually-enhanced portions of video recording of events
occurring on October 24, 2003

- Expects to offer

- <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication,
  duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit G:**  Microsoft PowerPoint presentation containing a slideshow translation of surveillance video of events taking place in locker room on October 24, 2003

- ▪     May offer if the need arises
- ▪     <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit H:**  Three-page document entitled, "P.I.C. Press Report" for Edition Date of "10/24[/2003]"

- ▪     Expects to offer
- ▪     <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication, Fed. R. Evid. 403

**Exhibit I:**  New York Post Security Department memorandum from Lloyd Vazquez to Kris Socia dated October 24, 2003, with attached photographs

- ▪     Expects to offer

**\*Exhibit J:**  Segments of multiplex surveillance camera footage of events taking place October 23 to 24, 2003 at Port Morris Facility, prepared by NextGen Associates, Inc.

- ▪     Expects to offer
- ▪     <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit K:**  Handwritten log prepared by Lloyd Vazquez concerning concealed locker room surveillance camera

- ▪     Expects to offer
- ▪     <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit L:**  Floor plan of portion of Port Morris Facility

- ▪     Expects to offer
- ▪     <u>PLAINTIFF'S OBJECTIONS</u>:  relevance, hearsay, authentication, Fed. R. Evid. 403

**\*Exhibit M:** Floor plan of portion of Port Morris Facility with markings by Plaintiff (Defendants' Exhibit 8 to the June 16, 2008 deposition of Plaintiff)

- Expects to offer

- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, Fed. R. Evid. 403

**\*Exhibit N:** Sequence of 16 black & white photographs bearing production numbers NYP 00184 to NYP 00199, sequentially identified as Exhibits N-1 to and including Exhibit N-16

- Expects to offer

- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit O:** Sequence of 24 color photographs bearing production numbers NYP 00216 to NYP 00239, sequentially identified as Exhibits O-1 to and including Exhibit 0-24

- Expects to offer

- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P:** The signed identification statements made by certain pressmen who viewed portions of the October 24, 2003 videotape recording, as follows:

**\*Exhibit P-1:** The signed statement of Jason Quick dated November 28, 2003

- Expects to offer

- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P-2:** The signed statement of Reginald Shackleford dated November 28, 2003

- Expects to offer

- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002

**\*Exhibit P-3:** The signed statement of William E. Bogan dated November 28, 2003

- ▪ Expects to offer
- ▪ <u>PLAINTIFF'S OBJECTIONS</u>: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P-4:** The signed statement of Raymond Walsh dated December 1, 2003

- ▪ Expects to offer
- ▪ <u>PLAINTIFF'S OBJECTIONS</u>: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P-5:** The signed statement of Brian Walsh dated November 28, 2003

- ▪ Expects to offer
- ▪ <u>PLAINTIFF'S OBJECTIONS</u>: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P-6:** The signed statement of Kenneth P. Eaton dated December 1, 2003

- ▪ Expects to offer
- ▪ <u>PLAINTIFF'S OBJECTIONS</u>: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P-7:** The signed statement of Lonnie Bowls dated December 2, 2003

- ▪ Expects to offer
- ▪ <u>PLAINTIFF'S OBJECTIONS</u>: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P-8:** The signed statement of Thomas Scherrer dated December 2, 2003

- ▪ Expects to offer

- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P-9:** The signed statement of Gary Sanderson

- Expects to offer
- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit P-10:** The signed statement of Thomas Carew

- Expects to offer
- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Q:** Letter from Joseph Vincent to William E. Loftus dated December 3, 2003 and enclosed New York Post Office Rules

- May offer if the need arises
- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, duplicative, Fed. R. Evid. 403

**Exhibit R:** Memorandum from Steven Grossman, Security Manager to Lloyd-Vazquez, dated December 5, 2003

- Expects to offer

**\*Exhibit S:** Handwritten notes of Joseph Vincent (2 pages), dated "12/23/03"

- May offer if the need arises
- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, Fed. R. Evid. 403

**\*Exhibit T:** Letter from Barry Levy, Esq. to Elliott Azoff, dated December 19, 2003

- Expects to offer
- PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, Fed. R. Evid. 403

37

**\*Exhibit U:** Letter from Barry Levy, Esq. to Elliott Azoff, Esq., dated December 29, 2003

- ■ May offer if the need arises
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, Fed. R. Evid. 403

**\*Exhibit V:** Letter from Barry Levy, Esq. to Zelma Mine, dated December 30, 2003

- ■ May offer if the need arises
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, Fed. R. Evid. 403

**Exhibit W:** Handwritten notes of Joseph Vincent (4 pages), dated "1/16/04"

- ■ May offer if the need arises

**\*Exhibit X:** List of pressmen locker assignments for locker nos. 406 – 420 as of October 24, 2003 as prepared by Lloyd Vazquez

- ■ Expects to offer
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, Fed. R. Evid. 403

**\*Exhibit Y:** Handwritten diagram of locations of locker nos. 374 – 421 as prepared by Lloyd Vazquez

- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, authentication, Fed. R. Evid. 403

**\*Exhibit Z:** Statements taken by Lloyd Vazquez of certain pressroom workers, identified as follows:

**\*Exhibit Z-1:** Statement of Frank Donnatin, dated January 31, 2004

- ■ Expects to offer
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-2:** Statement of Thomas Coffin, dated January 31, 2004

- ■ Expects to offer

- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-3:** Statement of Christopher Nash, dated January 29, 2004

- ■ Expects to offer
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-4:** Statement of John Kennedy, dated January 31, 2004

- ■ Expects to offer
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-5:** Statement of August Buffolino, dated January 31, 2004

- ■ Expects to offer
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-6:** Statement of Anthony Tortorello, dated January 31, 2004

- ■ Expects to offer
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-7:** Statement of Jim McVeigh Jr., dated January 31, 2004

- ■ Expects to offer
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-8:** Statement of James McMahon, dated January 31, 2004

- ■ Expects to offer
- ■ PLAINTIFF'S OBJECTIONS: relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-9:**  Statement of Eric Tonnesen, dated January 29, 2004

- Expects to offer
- PLAINTIFF'S OBJECTIONS:  relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-10:**  Statement of Peter Boyle, dated January 29, 2004

- Expects to offer
- PLAINTIFF'S OBJECTIONS:  relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit Z-11:**  Statement of Jason Quick, dated January 29, 2004

- Expects to offer
- PLAINTIFF'S OBJECTIONS:  relevance, hearsay, double hearsay, authentication, duplicative, Fed. R. Evid. 1002, Fed. R. Evid. 403

**\*Exhibit AA:**  Letter from Barry Levy, Esq. to Elliott Azoff, Esq., dated September 3, 2004

- May offer if the need arises
- PLAINTIFF'S OBJECTIONS:  relevance, hearsay, authentication, Fed. R. Evid. 403

Dated: New York, New York
       May 28, 2009

LAW OFFICES OF MARK KRESSNER      HOLLAND & KNIGHT LLP

By: _____ /s/ _____        By: _____ /s/ _____
      Mark Kressner                                      Michael Starr
      1937 Williamsbridge Road, Second Floor            195 Broadway, 24th Floor
      Bronx, New York 10461                              New York, New York 10007
      Tel: (718) 409-6606                                Tel: (212) 513-3200
      Fax: (718) 409-6607                                Fax: (212) 385-9010
      *Attorneys for Plaintiff*                          *Attorneys for Defendants*

**SO ORDERED:**

Honorable Sidney H. Stein
United States District Court Judge
Dated: _June  5_, 2009

# 6330295_v2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                                       :

CHRISTOPHER CAPANELLI,              :

                               Plaintiff,       :

                           :        No. 06 Civ 15397(SHS) (JCF)

              v.                 :

NYP HOLDINGS, INC. d/b/a NEW YORK POST and  :
LLOYD VAZQUEZ,               :

                           :

                       Defendants.   :

-------------------------------------------------------------------- x

## APPENDIX A:
## PARTIES' AGREED UPON STATEMENTS OF FACT

Plaintiff and Defendants agree to the following statements of fact:

1.    Plaintiff worked as a pressman at the Post's printing and distribution facility located at 900 East 132nd Street, Bronx, NY 10454 (hereinafter, the "*Port Morris Facility*") until he was informed of the termination of his employment on December 18, 2003.

2.    Plaintiff is and, at all times relevant to this action, was a member of a labor union called the New York Newspaper Printing Pressmen's Union Local Number 2 (hereinafter "*Pressmen's Local 2*").

3.    From 2001 to December 18, 2003, Plaintiff served as Chapel Chairman for a unit of pressroom workers represented by Pressmen's Local 2 and employed by defendant NYP Holdings, Inc., d/b/a the New York Post (hereinafter, the "*Post*").

4.  Defendant Joseph Vincent served as Vice President of Operations for the Post and, subsequently, as Senior Vice President of Operations for the Post – a position he held until January 1, 2008, when he ceased to be a Post employee.

5.  Defendant Lloyd Vazquez was hired by the Post in 2002 for the position of Security Manager, and has served as Director of Security for the Post since his promotion to that position in 2004.

6.  On October 24, 2003, Jason Quick reported to Mr. Vazquez that someone had vandalized his locker by scratching on the locker door the word "SCAB."

7.  On December 18, 2003, Plaintiff was advised by the Post of the termination of his employment.

8.  On or about February 23, 2004, the Office of the Bronx District Attorney (hereinafter, the "*Bronx DAO*") prepared and sent to Vazquez a criminal information in the matter of *The People of the State of New York v. Christopher Capanelli,* No. 12376C/04, accusing Plaintiff Capanelli of misdemeanor offences in connection with the making of graffiti on Jason Quick's locker (hereinafter, the "*Criminal Information*").

9.  On or about February 23, 2004, Vazquez signed and returned the Criminal Information that had been prepared by the Bronx DAO.

10. The Criminal Information prepared by the Bronx DAO accused Plaintiff Capanelli of the following crimes:

    a.  Criminal Mischief in the Fourth Degree in violation of P.L. 145.00(1);

    b.  Making Graffiti in violation of P.L. 145.60(2); and

    c.  Possession of Graffiti Instruments in violation of P.L. 145.65.

11.    Plaintiff's criminal trial commenced on January 10, 2006.

12.    Barry Levy, Esq. is an attorney at law who jointly represented Plaintiff and Pressmen's

Local 2 for purposes of the labor grievance that Pressmen's Local 2 had presented on

behalf of Plaintiff related to his discharge from employment on December 18, 2003, and

the subsequent arbitration with the Post arising from that grievance.

13.    On January 13, 2006, at the conclusion of Plaintiff's criminal trial, a jury acquitted

Plaintiff of all charges.

Dated:  New York, New York
        May 28, 2009

# 6330398_v2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                             :

CHRISTOPHER CAPANELLI,                :

                           Plaintiff,        :

                    v.                  :       No. 06 Civ 15397(SHS)(JCF)

NYP HOLDINGS, INC. d/b/a NEW YORK POST and  :
LLOYD VAZQUEZ,                     :

                          :

                      Defendants.    :

------------------------------------------------------------------ x

## APPENDIX B:
## PARTIES' AGREED UPON STATEMENTS OF LAW

Plaintiff and Defendants agree to the following statements of law:

1.    The elements of a malicious prosecution under New York State law are "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing [or continuing] the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)); *see also Broughton v. State*, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 95 (NY 1975).

2.    "[M]alice and probable cause are independent elements of a malicious prosecution action

and proof of one will not automatically result in an inference of the other in every case."

*Arnold v. Town of Wilton*, 126 A.D.2d 135, 138, 512 N.Y.S.2d 741, 742 (3d Dep't 1987)

(citing *Martin v. City of Albany*, 42 N.Y.2d 13, 396 N.Y.S.2d 612 (N.Y. 1977)).

Dated:  New York, New York
         May 28, 2009

# 6330400_v2

**APPENDIX C**

Page 1

1            CHRISTOPHER CAPANELLI

2   UNITED STATES DISTRICT COURT

3   SOUTHERN DISTRICT OF NEW YORK              ORIGINAL

4   ------------------------------x

5   CHRISTOPHER CAPANELLI,

6              Plaintiff,

7         vs.                    06 CV 15397(SHS)(JCF)

8   NYP HOLDINGS, INC. d/b/a NEW

    YORK POST, JOSEPH VINCENT, and

9   LLOYD VASQUEZ,

10             Defendants.

11  ------------------------------x

12

13

14       DEPOSITION OF CHRISTOPHER CAPANELLI

15            New York, New York

16           Monday, June 16, 2008

17

18

19

20

21

22

23  Reported by:

24  KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25  JOB NO. 17249

Page 5

1                    CHRISTOPHER CAPANELLI

2

3

4

5

6

7

8

9

10

11                        Redacted

12

13

14

15

16

17

18

19        Q.    In the last five years have you taken

20   any antidepressant medication?

21        A.    No.

22        Q.    Have you taken any anxiety medication?

23        A.    No.

24        Q.    Have you taken any psychotropic

25   medication of any kind at all?

Page 6

1                    CHRISTOPHER CAPANELLI

2        A.    No.

3        Q.    Have you been to a psychiatrist in the

4   last five years?

5        A.    No.

6        Q.    Have you been to a psychiatrist since

7   November 2003?

8        A.    No.

9        Q.    Have you been to a psychotherapist

10   since November of 2003?

11       A.    No.

12       Q.    Have you been to any sort of

13   psychotherapist, social worker, clinical

14   psychologist, anything like that?

15       A.    No.

16       Q.    Any sort of counseling or

17   psychotherapy treatments at all since November

18   2003?

19       A.    No.

20       Q.    Have any trouble sleeping recently?

21       A.    Yes.

22       Q.    Since when?

23       A.    I guess, you know, since all this --

24   all this stuff has began.

25       Q.    Have you seen a doctor for it?

```
 1              CHRISTOPHER CAPANELLI
 2      A.    No.
 3      Q.    Taking any medication for it?
 4      A.    No.
 5      Q.    Anything else that's happened to you
 6   since this trouble began?
 7            MR. KRESSNER:  Objection to the form
 8      of the question.  If you will break that
 9      down.  I'm not sure what it means.
10   BY MR. STARR:
11      Q.    Any other difficulties you've had in
12   life since this trouble began?  I'll withdraw
13   that question.
14            Have you had any psychosomatic
15   conditions as a consequence of -- I'll withdraw
16   that question as well.
17            Since November 2003, have you had any
18   psychosomatic conditions?
19      A.    No.
20      Q.    Upset stomach, hearing problems,
21   gaining weight, losing weight, anything like
22   that?
23      A.    Maybe hearing problems.
24      Q.    Hearing problems and some difficulty
25   sleeping.  Did you see your doctor for your
```

Page 8

1                    CHRISTOPHER CAPANELLI

2    hearing problems?

3        A.    I believe it's a routine test within

4    the industry.

5        Q.    Okay.  But it wasn't particularly

6    related to anything related to this lawsuit, was

7    it?

8        A.    Not hearing, no.

9

10

11

12

13

14

15

16                    Redacted

17

18

19

20

21

22

23

24

25

1          CHRISTOPHER CAPANELLI

2

3

4

5

6                   **Redacted**

7

8

9     Q.    Do you recall now that you were

10   convicted of the crime of disorderly conduct on

11   or about August 23, 1994?

12    A.    Yes.

13

14

15

16

17

18                  **Redacted**

19

20

21

22

23

24

25

Page 22

1                    CHRISTOPHER CAPANELLI

2

3

4

5                          Redacted

6

7

8         Q.    Do you recall being charged with

9    criminal mischief in or about February 2004?

10        A.    Yes.

11        Q.    After your conviction for disorderly

12   conduct, did you experience any psychological

13   distress?

14        A.    No, not really.

15        Q.    Have any trouble sleeping?

16        A.    No.

17        Q.    And after your conviction for criminal

18   trespass when you were 17 years old, did you

19   experience any psychological distress?

20        A.    No.

21        Q.    Have any trouble sleeping after that?

22        A.    I don't believe so, no.  I don't

23   really remember.  It's been so many years.

24

25                          Redacted

Page 67

1                 CHRISTOPHER CAPANELLI

2

3                        **Redacted**

4        Q.    Now, you went to the Bronx District

5   Attorney's Office on February 23 with your

6   lawyer.  Did you expect that you would be

7   arrested?

8        A.    No.

9        Q.    Did you fear incarceration at that

10  time?

11       A.    Anything's possible.  I don't know.

12       Q.    Did you expect it, yes or no?

13       A.    No.

14       Q.    Were you losing sleep prior to

15  February 23, 2004?

16       A.    Yes.

17       Q.    What was causing you to lose sleep?

18       A.    Being falsely accused of something.

19       Q.    Anything else?

20       A.    No.  Mostly all job-related.

21       Q.    Your loss of sleep was job-related, is

22  that your testimony?

23       A.    To do with the firing and malicious

24  prosecution had all to do with my job-related

25  incident and why I can't sleep and

Page 68

1                   CHRISTOPHER CAPANELLI

2      yaddy-yaddy-yah.

3

4

5

6

7                        Redacted

8

9

10

11

12      Q.    You were worried about you lost your

13   job?

14      A.    Amongst other things.

15      Q.    Did that cause you to lose sleep?

16      A.    I guess.

17      Q.    How much sleep did you lose?

18      A.    I don't know.

19      Q.    Did you lose ten minutes a night?

20      A.    A few hours a night.

21      Q.    Lost a few hours a night, but not

22   enough to cause you to ever see a doctor about

23   it?

24      A.    Never went to a doctor, no.

25                        Redacted

Page 124

1                CHRISTOPHER CAPANELLI

2            MR. STARR:  I would now like marked as

3       Capanelli Exhibit 8 a certain floor plan.

4            (Capanelli Exhibit 8, a certain floor

5       plan, marked for identification, as of this

6       date.)

7  BY MR. STARR:

8       Q.   Now, you have in front of you the

9  document that's been marked as Capanelli Exhibit

10 8.  See it?

11      A.   Yes.

12      Q.   Yes?

13      A.   Yes.

14      Q.   You see that sticker on it, the white

15 sticker that says Capanelli 8?

16      A.   Yes.

17      Q.   This is a floor plan of a section in

18 the pressroom of the New York Post; is that

19 correct?

20      A.   Yes.

21      Q.   And you were asked about this at a

22 prior deposition, isn't that true?

23      A.   Yes.

24      Q.   And this shows a --

25      A.   Floor plan at the pressroom.

Page 125

1                    CHRISTOPHER CAPANELLI

2         Q.    As chapel chairman, you had an office

3    in the pressroom?

4         A.    Yes.

5         Q.    And it's shown on this document, isn't

6    it?

7         A.    Yes.

8         Q.    And in fact, you have previously put

9    your initials CC --

10        A.    Yeah.

11        Q.    -- in that box?

12        A.    Yeah.

13        Q.    What I'm going to ask you to do, I'm

14   going to give you a red pen and I'm going to ask

15   you to put a circle around the "CC" that you

16   previously marked as the pressmen's -- as the

17   office of the chapel chairman.

18        A.    (Witness complies.)

19        Q.    Now, are all these areas to the left

20   and behind your office, are those lockers for

21   the pressmen?

22        A.    Yeah.

23        Q.    Where is Mr. Quick's locker, or where

24   was it?

25        A.    In this aisle.

Page 126

1              CHRISTOPHER CAPANELLI

2        Q.    Would you just put a big Q in the area

3   where Jason Quick's locker is on this diagram.

4        A.    (Witness complies.)

5        Q.    Thank you.  How far is it to walk from

6   your office to Jason Quick's locker?

7        A.    Two minutes.

8        Q.    That long?

9        A.    I don't know.  One minute?  I don't

10   know.  Two minutes.

11        Q.    Takes one or two minutes.

12              You were in your pressroom office on

13   2:30 A.M. on the morning of October 24, 2003?

14        A.    Yes.

15        Q.    And you know exactly that you were

16   there at 2:30 A.M.; isn't that correct?

17        A.    Yes.

18        Q.    Because you sent a fax from your

19   office at 2:30 A.M.?

20        A.    Right.

21        Q.    And you said a confirmation came back

22   at 2:32 A.M.?

23        A.    Yes.

24

25                    **Redacted**

Page 135

1              CHRISTOPHER CAPANELLI

2

3

4

5

6

7

8

9                    **Redacted**

10

11

12

13

14

15

16

17       Q.    Perhaps.  You testified in the

18   arbitration that you did not deface Jason

19   Quick's locker because you were actually in the

20   Chairman's Office, Chapel Chairman's Office?

21       A.    Right.

22       Q.    With an individual named Mr. Valerio?

23       A.    Right.

24

25                    **Redacted**

Page 136

1              CHRISTOPHER CAPANELLI

2

3

4

5

6                       Redacted

7

8

9

10      Q.    And he testified that he was in your

11   office at 2:30 A.M. on the morning of October

12   24; is that correct?

13      A.    Yes.

14      Q.    And you testified that you were in

15   your office at 2:30 A.M. on the morning of

16   October 24, 2003; is that correct?

17      A.    Yes.

18      Q.    And being in your office, you were two

19   minutes away, one to two minutes away, from the

20   area that of Jason Quick's locker that was

21   vandalized, wasn't that true?

22      A.    Yes.

23      Q.    Do you know anybody in The Post that

24   looks like you?

25      A.    There's many people.

Page 137

1                CHRISTOPHER CAPANELLI

2       Q.    How many?

3       A.    I don't know.  Reporters, pressmen.

4  You know, I don't know.

5       Q.    How many pressmen look like you?

6       A.    I don't know.  I don't know.

7       Q.    Were any of the pressmen who look like

8  you in your office at 2:30 A.M.?

9       A.    No.

10      Q.    At the time you walked out of your

11 office, whenever that was on or about 2:30 A.M.

12 in the morning, did you see any of those people,

13 pressmen who look like you in the locker room?

14      A.    I don't remember.

15

16

17

18

19                    Redacted

20

21

22

23

24

25

Page 140

1                    CHRISTOPHER CAPANELLI

2                         Redacted

3         Q.    You were at that time a Chapel

4    Chairman?

5         A.    Yes.

6         Q.    And you had at that time the over and

7    above restored to you?

8         A.    Yes.

9         Q.    And you were not required to be in the

10   pressroom at all?

11        A.    Yes, I was.

12        Q.    You could be in your office?

13        A.    Conducting union business, yeah.

14        Q.    You could be anyplace in the area that

15   you thought was important for you to be, is that

16   true?

17        A.    As long as I didn't leave the

18   building, yeah.

19        Q.    But you didn't have to be on the

20   pressroom floor at all?

21        A.    Unless I was conducting, at the time,

22   conducting union business.

23        Q.    So of all the pressmen in that room at

24   the New York Post at 2:30 A.M. on the 23rd --

25   24th of October 2004, you were in fact the only

Page 141

1                    CHRISTOPHER CAPANELLI

2    one who was not required to be in the pressroom?

3         A.    Not to be -- not required to be on the

4    press, right?  Is that what you said?

5         Q.    You were not required to be on a

6    press, right?

7         A.    Right.

8

9

10

11

12

13

14

15                    **Redacted**

16

17

18

19

20

21

22

23

24

25