UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

CHRISTOPHER CAPANELLI,

                     Plaintiff,

           v.                                    No. 06 Civ. 15397 (SHS)(JCF)

NYP HOLDINGS INC. d/b/a NEW YORK POST,
JOSEPH VINCENT, and LLOYD VAZQUEZ,

                     Defendants.

-------------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR RULE 52(c) JUDGMENT ON PARTIAL FINDINGS OF FACT

Of Counsel:
Michael Starr
Michelle Bedoya Barnett

HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
Tel: (212) 513-3200
Fax: (212) 385-9010
Attorneys *for Defendants*

Defendants NYP Holdings, Inc. and Lloyd Vazquez submit this memorandum of law in support of their motion pursuant to Federal Rule Civil Procedure 52(c) for judgment for defendants on partial findings of fact.[1]

## PRELIMINARY STATEMENT

There is, and always has been, only one issue of fact in this case that needed to be tried: Was Pressman Jason Quick's locker unmarred prior to October 24, 2003 (as Defendant Lloyd Vazquez says it was) or had it already been vandalized (as alleged by Plaintiff). *See* Report and Recommendations to Defendants' Motion for Summary Judgment (Dkt #68) at 17 (hereinafter "*Report*"). Given that Plaintiff has already called to testify all of the witnesses that he intends to call on this fact issue, the Court is authorized to grant Defendants' motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure Rule 52(c).[2] Respectfully, no rational trier of fact could believe, based on the testimony of Coffin, that Plaintiff has established by a preponderance of the evidence that Jason Quick's locker was vandalized prior to October 24th.

---

[1] Due to the abrupt discontinuance of the trial and Plaintiff's failure to obtain alternate counsel to conduct the trial on his behalf if original counsel became incapacitated, as was reasonably predictable under the circumstances, Defendants are also entitled to involuntary dismissal of this action for failure to prosecute under Rule 41 (a)(2), especially since Plaintiff had ample notice of that possibility. *See Palmieri v. Defaria*, 88 F.3d 136, 139-140 (2d Cir. 1996). Given, however, the law's preference for resolving litigated matters on the merits, *see Marfia v. T.C. Bankasi*, 100 F.3d 243, 249 (2d. Cir. 1996); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), Defendants elect to move only for Rule 52(c) judgment which, as explained below, is completely warranted in this case. Defendants nevertheless expressly reserve their right to move for dismissal under Rule 41(a)(2) at some later date should that prove necessary.

[2] The issue for consideration by the Court is even narrower than whether Defendant Lloyd Vazquez had probable cause to bring this case to the authorities. Magistrate Judge Francis impliedly decided in his Report that at the time Vazquez contacted the District Attorney's office, he had probable cause but for Plaintiff's assertion that Lloyd Vazquez lied or withheld information when he presented the matter to the District Attorney's office. That assertion was based on the alleged factual contention that the locker had already been vandalized by the morning of October 22, 2003. Therefore, the more narrow fact issue for the Court is the condition of Jason Quick's locker on Thursday afternoon, October 23, 2003, and whether Mr. Vazquez lied about it.

1

## STATEMENT OF FACTS

The facts relevant to this motion are in the trial record conducted on September 14, 15 and 16, 2009, and the accompanying affidavit of Michael Starr, Esq., attorney of record for Defendants, and the exhibits attached thereto, to which the Court is respectfully referred.

## ARGUMENT

1. **The Court May Render Judgment For Defendants If it Finds a Dispositive Issue In Their Favor.**

Federal Rule of Civil Procedure Rule 52(c) provides, in pertinent part, as follows:

> If a party has been fully heard *on an issue* during a nonjury trial and the court *finds against* the party *on that issue*, the court may enter judgment against the party on a claim . . . that, under the controlling law, can be maintained . . . only with a favorable finding on that issue.

*Id.* (emphasis supplied).

Thus, Rule 52(c) permits the Court to enter judgment for Defendants as a matter of law in this non-jury trial on partial findings of fact where, as here, the Plaintiff has adduced all the evidence he intends to offer on that specific fact issue. The Court need not wait until the close of Plaintiff's evidence, as was the case under the former Rule 41(b). *See Gannon v. U.S.*, 571 F. Supp 2d 615, 618 (E.D. Pa. 2007) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2572.1 (2d. Ed. 1995); Advisory Committee Note to 1993 Amendments to Rule 52 (rule, as amended, "authorizes the court to enter judgment *at any time* that it can appropriately make a dispositive finding of fact on the evidence") (emphasis added).

Furthermore, on a Rule 52(c) motion, the Court does not (1) evaluate the evidence under the standards governing a directed verdict, (2) draw any special inferences in the non-movant's favor, or (3) consider the evidence in the light most favorable to the non-moving party. *Lamarca v. U.S.*, 31 F. Supp. 2d 110, 123-24 (E.D.N.Y. 1998); *see also Ritchie v. U.S.*, 451 F.3d 1019,

1022-1023 (9th Cir. 2009), *cert. denied*, 127 S. Ct. 1337. This is so because in a non-jury trial, "the court acts as both judge and jury, weighing the evidence, resolving any conflicts, and deciding where the preponderance lies." 31 F. Supp. 2d at 124.

On Plaintiff's claim for malicious prosecution against Defendant Vazquez, Magistrate Judge Francis denied Defendant's motion for summary judgment for one reason and one reason only: Plaintiff's assertion that he would present at trial the testimony of Thomas Coffin and Frank Donnatin and that each would say that he personally saw that Jason Quick's locker had already been defaced with the word "SCAB" by Wednesday, October 22, 2003. Specifically, in his Report, Judge Francis stated as follows:

> Key to all of Mr. Capanelli's arguments is his claim that the vandalism occurred before October 24, 2003, and that Mr. Vazquez knew this to be the case at the time. According to the testimony of Mr. Donnatin and Mr. Coffin at the criminal trial, the word "scab" appeared on Mr. Quick's locker on October 21 or 22, 2003.

(Report at 15.) Judge Francis goes on to state that "while the defendants' evidence is strong, it is not the role of the Court to weigh the proof at this stage. Therefore, the date of the vandalism remains an issue of material fact to be determined at trial." (*Id.* at 17.)

This disputed fact was, in reality, the *only* fact that required resolution at trial, since absent proof that Mr. Vazquez knew the locker to have been vandalized prior to October 24, 2003, there was no evidence from which a reasonable juror could find that Mr. Vazquez "commenced" the criminal prosecution against Plaintiff (by lying to the police), lacked probable cause, or acted with actual malice. *Id.* at 18-19. *See also* Pre-trial Order (Dkt No. 94) at Appendix B (Parties' Agreed Upon Statements of Law).[3]

---

[3] Judge Francis also permitted trial of Plaintiff's claim of malicious prosecution by Mr. Vazquez on the theory that he had withheld evidence from the police, namely, the videotape showing whomever it was who vandalized Mr. Quick's locker prior to 2:38 a.m. on the morning of October 24, 2003. (Report at 18-19.) That issue, however, was also based on the anticipated testimony of Mr. Donnatin and Mr. Coffin to the effect that the locker had been

3

When the trial of this case was stopped, again, due to the incapacity of Plaintiff's counsel, Plaintiff had not concluded his testimony; there was, however, never any contention by Plaintiff that he himself had personal knowledge as to the condition of Jason Quick's locker prior to October 24, 2003.[4] Plaintiff's counsel advised the Court that his one remaining witnesses would be Plaintiff's wife who would testify "in support of [Plaintiff's] damages" (Tr. at 366:19-20), but not on any other issues. Plaintiff's counsel also stated that he wanted to examine Joseph Vincent, formerly the Post's Senior Vice President of Operations, who (apparently) would testify as to feelings toward Plaintiff. But Mr. Vincent has no personal knowledge as to how Jason Quick's locker appeared immediately prior to his October 24, 2003 report of vandalism. (*See* Star Aff. ¶¶ 4-5).

Thus, on the sole dispositive fact issue, Plaintiff had completed the testimony of the only two witnesses he had: Lloyd Vazquez and Thomas Coffin. While Plaintiff had represented prior to trial that another allegedly corroborating witness, Frank Donnatin, would also testify, Plaintiff had not called Donnatin to the stand as of the time the trial was adjourned and, in failing to name him in response to the Court's question as to who his remaining witnesses were, impliedly represented that Mr. Donnatin would not be called.[5] Accordingly, Plaintiff has had a full opportunity to present all of the evidence he has on the dispositive fact issue of when the act of vandalism to Jason Quick's locker occurred. The Court may, therefore, without hearing

---

vandalized earlier than Mr. Vazquez had stated. Therefore, for purposes of Rule 52(c), the analysis of that branch of Plaintiff's claim is exactly the same.

[4] In opposition to summary judgment, Plaintiff offered the trial testimony and arbitration testimony of Messrs. Coffin and Donnatin to substantiate his contention, but he never testified as to that fact at either proceeding. Moreover, although Plaintiff submitted declarations in opposition to summary judgment (*See* Dkt. Nos. 64, 65 and 66), none of those addressed the condition of Mr. Quick's locker prior to October 24, 2009.

[5] The failure to call Frank Donnatin as a corroborating witness means more than that Plaintiff had less evidence of the disputed fact at trial than he asserted he would have in opposition to Defendants' motion for summary judgment. Rather, his failure to call Mr. Donnatin requires the inference that his testimony, if actually presented at trial, would have favored Defendants, not Plaintiff. *See* Point 3, *infra*.

4

Plaintiff's remaining evidence as to alleged damages and Joseph Vincent's purported bias, grant judgment for Defendants.[6]

The testimony of Mr. Vazquez on the issue of the condition of Mr. Quick's locker on the afternoon of October 23, 2004 was clear and unequivocal. It was consistent with every statement he had ever made on the subject. After the full opportunity for cross examination (under the guise of direct examination), Plaintiff was unable to adduce from Mr. Vazquez any statement or fact that was in conflict with or inconsistent with his testimony on this issue. And, throughout his testimony, Mr. Vazquez was co-operative, calm and responsive to the questions posed to him by Plaintiff's counsel and the Court.

As for Mr. Coffin, he was quite the opposite. Mr. Coffin, who claimed to have no personal stake in the litigation, often sparred with counsel for Defendants. Coffin admitted that he had been dishonest when he gave two different statements as to the condition of Mr. Quick's locker. He admitted that he told Mr. Vazquez on January 29, 2004 that he had no knowledge as to when the vandalism of Mr. Quick's locker had occurred. (Tr. at 89:16-24 & 92:1) Mr. Vazquez corroborated this fact. (Tr. at 292-94 & Exh. Z-2.) Mr. Coffin further admitted that he "lie[d]" to Mr. Vazquez on that occasion and gave as his reason for doing so, that he considered the matter to be "juvenile." (*Id.* at 91:12-16.) He was, however, unable to explain on cross examination how it was that he considered a matter resulting in the termination of employment of his brother union member to be "juvenile." (*Id.* at 91:17–92:4.)

---

[6] Since Defendants have not had the opportunity to fully present their evidence on this factual issue, Rule 52(c) judgment is only available to Defendants. If the trial in this case goes forward, Defendants intend to call Christopher Nash and William Bogan. Defendants proffer that Mr. Nash would give testimony that is consistent with his Declaration dated October 15, 2008, submitted in support of Defendants' motion for summary judgment (*see* Dkt #59), which, in sum and substance, states that he specifically remembers not seeing the word "SCAB" on Quick's locker any earlier than Friday, October 24, 2003; and that Mr. Bogan, the custodian of attendance records for the Pressroom, would testify that Thomas Coffin actually did work on October 23, 2003, contrary to his inconsistent testimony regarding whether he was working that day or not. (*See* Starr Aff. ¶¶ 7-10.)

Mr. Coffin further admitted that he did not tell anyone about the date of the vandalism of Mr. Quick's locker – not even his union – until just before he testified for Plaintiff at the criminal trial in January 2006 and some weeks later at the arbitration. (*Id.* at 96:13- 97:5.) In other words, Mr. Coffin never told anyone in the Post's management his new and revised version of events, which one presumes he would have done if it had been true and he desired to help his union brother be reinstated to his job. In fact, he never told anyone – not Plaintiff, not the Chapel Chairman – what he now claims is "the truth" until just in time to help Plaintiff avoid criminal conviction and obtain reinstatement to his job. (*Id.*)

Furthermore, Coffin falsely testified that he specifically remembered the word "SCAB" as being etched at the very bottom of the locker, almost to the floor. (Tr. at 77-78 [testifying that the bottom of the word "scab" was less than a foot from the floor, "definitely" on the lower part and *below the lock*].) Coffin was compelled to recant this testimony when he was confronted with Defendants' Exhibit I (contemporaneous pictures of the defaced locker), and he was forced to admit that the defacement was made to the middle and upper part of the locker, the bottom-most letter being at about the height of the lock in the middle of the locker. (*Id.* at 99:25-101:3)

But, most damaging of all, is that Mr. Coffin fundamentally contradicted himself on a key, yet simple fact: whether he was at work on Thursday, October 23, 2003, or not. At the arbitration, Mr. Coffin testified that even though it was more than two years since the underlying events, he specifically remembered seeing Mr. Quick's locker vandalized on Wednesday (October 22), *because* he was off from work on Thursday (October 23), and remembered seeing it before his "off" day. (Tr. at 77:2-78:13.) He said the same thing at the trial. (Tr. 90:2-12; 109:19-110:2; 110:10-24.)

Thus, his being off on Thursday (October 23) is, according to Mr. Coffin, the very reason why he can be sure that the vandalism occurred sometime prior to that Thursday afternoon. But that crucial mnemonic turns out to be false.

On cross-examination, Coffin was confronted with his own handwriting and forced to admit his signature was indeed on the sign-in sheet for the Pressroom Daily Time Sheet (Day side) for Thursday, October 23. (Tr. 109:6-18 & Exh. BB; Tr. 114:15-115:2 & Exh. 32.)[7] This showed that he had, in fact, worked on Thursday (October 23) – contrary to every statement he had given at all prior proceedings. When confronted with this irreconcilable contradiction, Mr. Coffin was, to be charitable, confused. He persisted in his assertion that he was off on Thursday (October 23) – which is "the *reason* why" he "know[s] for ... certain" that the locker was already vandalized (Tr. at 90:8-9), but then admitted that "I guess I did" work on Thursday (October 23), after all (Tr. 115:3-6; *id.* at 115:15-18 ["Well, my testimony - - I believe I was off on that Thursday, *but obviously I wasn't*"] (emphasis added)).[8]

For all these reasons, Plaintiff has no cogent evidence that Mr. Vazquez lied when he told the police the locker was unmarred on Thursday afternoon, October 23. It is the Plaintiff's burden to establish that the locker was marred prior to the morning of October 24, 2003, and having presented all of the evidence he had on this issue, Plaintiff has failed to meet that burden. And, as more fully explained below in Part 2, no rational trier of fact could believe the self-contradictory testimony of Coffin over the consistent testimony of Mr. Vazquez (and the

---

[7] Exhibit 33 is in evidence. (Tr. 113:22-114:1.)

[8] If the trial were to proceed, Mr. Bogan, as the custodian of attendance records, will testify that Exh. BB is a business record of the Post and that it and other documents, notably Plaintiff's Exhibit 32, show that Mr. Coffin actually reported to work on this particular day off – Thursday, October 23. (*See* Starr Aff. ¶¶ 7-9.) Defendants would also proffer payroll records, in rebuttal to Mr. Coffin, that show that he was paid for working on Thursday, October 23, 2003. (*See* Starr ¶ 9.)

7

putative supporting testimony of Messrs. Nash and Bogan). The Court should so find and, in so finding, it has no alternative but to grant judgment for Defendants.

2. **The Court May Disregard the Testimony of Thomas Coffin In Its Entirety Because It Is "Too Incredible To Be Believed."**

The testimony of Mr. Coffin -- which is the only evidence Plaintiff actually presented at trial to support the factual allegation that Mr. Vazquez lied to the police -- is not only too insubstantial to carry Plaintiff's burden of proof, it should be disregarded in its entirety. Although not necessary to decide the merits of this motion, the Court is permitted to "disregard an offer of evidence that is too incredible to be believed." Wright & Miller, *Federal Practice and Procedure* § 2727 at 10A (3d Ed. 2008). Even in opposing a motion for summary judgment, the non-moving party must present evidence with the "force needed to allow a jury to rely on it" *Id.* A court "is *never* required to accept evidence that is inherently incredible or "too incredible" to be accepted by reasonable minds." *Agosto v. Immigration and Naturalization Serv.*, 436 U.S. 748, 772 (1978) (citing Moore's *Federal Practice Guide*, 56.15(4) (2d ed. 1976); *see also Whitaker v. Coleman*, 115 F.2d 305, 306 (5th Cir. 1940), and *Dewey v. Clark*, 180 F.2d 766, 772 (D.C. Cir. 1950) (leading cases).

In *Schmidt v. Tremmel*, No. 93 CIV.8588, 1995 WL 6250 (S.D.N.Y. Jan. 6, 1995), District Judge Martin aptly noted that "[a]lthough [plaintiff] apparently contests defendants' version of the incidents, issues of credibility sufficient to defeat a motion for summary judgment are not created if the contradicting or impeaching evidence is too incredible to be believed by reasonable minds.'" *Id.* at *3 (quoting *Price v. Worldvision Enters. Inc.*, 455 F. Supp. 252, n.25 (S.D.N.Y. 1978), *aff'd*, 603 F.2d 214 (2d Cir. 1979). Because "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in

8

[plaintiff's] complaint or in her subsequent missives to the court," the court properly disregarded and ignored the plaintiff's contentions, even on a motion for summary judgment. *Id.* at *3.

No "reasonable mind[]" could credit testimony that contradicts itself, as does Mr. Coffin's testimony that he was at work and was not at work on the same day. The capacity of human beings to hold present to mind two contradictory thoughts (assuming for the sake of argument, that Coffin was being truthful and was not lying through his teeth) is called by psychologists "cognitive dissonance." Mr. Coffin, if not mendacious, had that in spades. The law, however, cannot be "cognitively dissonant," and testimony that contradicts itself in a material way is not evidence at all. Since Mr. Coffin's testimony must, for this reason, be "disregard[ed]," there is, actually no evidence – none at all – to dispute Mr. Vazquez's testimony as to the condition of the locker as he saw it on the afternoon of Thursday, October 23, 2009.

3. **Plaintiff's Failure To Call Frank Donnatin Permits a "Missing Witness" Adverse Inference.**

Because Plaintiff elected not to call Frank Donnatin, the trial record is devoid of the only other piece of evidence that Judge Francis expected to be presented at trial and that caused him to recommend denial of Defendants' motion for summary judgment. Had Magistrate Francis had the benefit of knowing that Plaintiff would make no effort to have Frank Donnatin testify at trial, this case might not have come to trial at all.

The absence from trial of Mr. Donnatin's testimony serves as even further reason for this case to be disposed of right now, because a trier of fact may draw an adverse inference against a party who fails to produce a supporting witness under these circumstances.

Under federal law, the trier of fact may draw a "missing-witness" adverse inference against the offending party when: (1) the witness's testimony would be material and (2) when the witness is peculiarly within the control of that party. *Satnick v. National Railroad Passenger*

9

*Corp*, 2005 WL 236493 at *1 (citing *United States v. Caccia*, 122 F.3d 136, 138 (2nd Cir. 1997)). The witness is "within the control" of the party opposing the inference if either (1) the witness is physically available only to the opponent, or (2) the witness has a relationship with the opposing party that practically renders his testimony unavailable to the moving party. *Ranish v. Delta Airlines, Inc.* 89 F.3d 826 at *3 (2nd Cir. 1995).

Under New York law, a "missing-witness" adverse inference should be made where: (1) the witness is under the plaintiff's control and (2) is in a position to give substantial, not merely cumulative, evidence. *See Chandler v. Flynn*, 489 N.Y.S. 2d 289, 301-302 (N.Y. App. Div. 2. 1985).[9] "Control is used in a broad sense and includes a witness under the influence of a party or one whom it may be naturally inferred is of good will to the party." *Id.* at 291; *see Masterson v. Solomon*, 80 N.Y.S. 2d 866, 868 (N.Y. Sup. 1948) (applied the "missing witness" adverse inference in regards to a friendly co-worker that failed to testify at trial). "The burden is on the party *opposing* the inference to show that the witness is not available or under their control." *Chandler*, 489 N.Y.S. 2d at 291-292.

Here the witness, Frank Donnatin, has a special relationship to the Plaintiff so that he is unavailable to Defendants as a practical matter. Indeed, Defendants' counsel communicated to Mr. Donnatin through the current Chapel Chairman that they wished to meet with him, and they were told by the Chapel Chairman that Mr. Donnatin would not come to such a meeting. (Starr Aff. ¶ 6.) Moreover, because Mr. Donnatin is a member of Plaintiff's union and testified in his favor at two prior proceedings in 2006, he is under Plaintiff's control in the "broad sense," as it

---

[9] A "missing-witness" adverse inference is proper under federal law if it is proper under New York law because both afford the same protection to the party requesting the adverse inference. *See Royster v. Ercole*, 2008 WL 542505, * 4 (S.D.N.Y. 2008) (relying on *Satnick*, 2005 WL 236493 at *1 & n. 2 (citing *Martinelli v. Bridge For Roman Catholic Diocesan Corp.*, 196 F.3d 409, 432 (2d Cir.1997)).

10

may be "naturally inferred" that he is favorably disposed to the Plaintiff. *See Chandler v. Flynn*, 489 N.Y.S. 2d at 291.

In addition, Plaintiff has had more than adequate notice of this trial and has never explained why Mr. Donnatin was not amenable to subpoena. Significantly, Judge Francis denied Defendants' motion for summary as to the claim of malicious prosecution against Mr. Vazquez only because he presumed that, since both Mr. Donnatin and Mr. Coffin reside within the subpoena power of the Court, they could be compelled to testify for Plaintiff and that their testimony at the trial of this action would accord to their prior sworn testimony. *See* Report at 16.

Accordingly, it should be inferred from Plaintiff's failure to call Mr. Donnatin that his testimony would *not* support Plaintiff but rather would support Defendants' contention that Jason Quick's locker was *not* vandalized prior to the late afternoon of Thursday, October 23, 2003 -- just as Mr. Vazquez said it was.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for judgment on partial findings should be granted in all respects.

Dated:   New York, New York
         September 23, 2009

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
Michael Starr
Michelle Bedoya Barnett
195 Broadway
New York, New York 10007
(212) 513-3200
(212) 385-9010